# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALAN BIRNBAUM, *et al.*, | |
| Plaintiffs, | |
| v. | |
| MUNICIPALITY OF ANCHORAGE, *et al.*, | Case No. 3:22-cv-00007-SLG |
| Defendants. | |

## ORDER RE MOTION TO DISMISS

Before the Court at Docket 14 is Defendants Municipality of Anchorage, Board of Adjustment of the Municipality of Anchorage, and Platting Board of the Municipality of Anchorage's (Municipality's) Motion to Dismiss for Lack of Jurisdiction. Plaintiffs Alan Birnbaum and Ruth Dukoff responded in opposition at Docket 16, to which the Municipality replied at Docket 19. Oral argument was held on July 26, 2022.

## BACKGROUND[1]

This case is about the development of the Spruce Terraces Subdivision, which is intended to be built in the Hillside area of Anchorage. Plaintiffs are

---

[1] These background facts are drawn from the allegations in Plaintiffs' complaint, which the district court must take as true for the purposes of the Municipality's motion to dismiss. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("We accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party.").

individuals who reside near the proposed development.[2]  Defendants are (1) the Municipality of Anchorage; (2) the Platting Board, which has decision-making authority over developments in Anchorage, such as Spruce Terraces Subdivision; and (3) the Board of Adjustment, which decides appeals from the Platting Board.[3]

Plaintiffs' primary complaint is that the development of the Spruce Terraces Subdivision endangers their lives and property, and those of their neighbors, in the event of a wildfire requiring their evacuation.  Plaintiffs also contend that the Platting Board and the Board of Adjustment are biased against the lives and property of Anchorage residents and in favor of the largest developer of houses in Alaska in a manner that violates the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution.[4]

Plaintiffs are concerned about the wildfire risk associated with the construction of the Spruce Terraces Subdivision because the development would increase the number of people dependent on the sole access road serving their community.  Plaintiffs describe this road as "hazardous" because it is steep,

---

[2] Docket 1 at 3 ¶ 5, 7–8 ¶¶ 21–23, 63 ¶¶ 213–14.

[3] Docket 1 at 3 ¶¶ 6–8.

[4] Docket 1 at 2 ¶ 1.

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 2 of 30

narrow, sloped, and has hairpin turns.[5]   In the event of a fire, or any other emergency, residents could become trapped if the road became impassible and evacuation were impossible.[6]  Emergencies could escalate if emergency vehicles are unable to use the road.[7]  Plaintiffs maintain that the Hillside area in particular is at risk of loss of life and property from a wildfire because of the "surrounding wilderness and the steep topography."[8]  A secondary access road to Plaintiffs' community could be built on Mountain Air Drive, but the road has not received full funding or approval for construction.[9]

Recognizing the threat to residents served by a single access road, the Anchorage Municipal Assembly passed a law in November 2019 requiring that new developments "where the number of dwelling units exceeds 30 shall be provided with two separate and approved fire apparatus access roads."[10]  By comparison, with the addition of the Spruce Terraces Subdivision, approximately 145 houses will be dependent upon the same single access road, 27 of which will be houses

---

[5] Docket 1 at 6 ¶ 16.

[6] Docket 1 at 4–5 ¶ 11.

[7] Docket 1 at 5 ¶ 13.

[8] Docket 1 at 4 ¶ 10.

[9] Docket 1 at 16–17 ¶ 54.

[10] Docket 1 at 5 ¶ 13.

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 3 of 30

in the new Spruce Terraces Subdivision.[11]  Plaintiffs allege that the approval of the Spruce Terraces Subdivision violates this municipal law, in addition to approximately 30 provisions of the Anchorage Municipal Code and associated regulations.[12]

The proposed development of the Spruce Terraces Subdivision began in May 2018 when the former owners of the property submitted applications to the Platting Board for a preliminary plat to subdivide the property into 27 lots.  The Platting Board considered these applications in Case No. S12420.[13]  The Traffic Department objected to S12420 due to, among other things, concerns about the addition of homes without a secondary access road.[14]  The Fire Department approved of S12420, subject to the inclusion of five conditions intended to address the increased fire risk, including one condition prohibiting construction beyond 11 of the lots until a secondary access road on Mountain Air Drive was funded and approved for construction.[15]  The Platting Board approved S12420 subject to the

_____

[11] Docket 1 at 8 ¶ 23.

[12] Docket 1 at 1; *see generally* Docket 1 at 64–73 ¶¶ 220–68 (Counts I through VII).

[13] Docket 1 at 7–8 ¶ 21.

[14] Docket 1 at 9–10 ¶¶ 26–28 ("[T]he Traffic Department 'cannot support the addition of homes in this area without construction of a secondary access being guaranteed.'").

[15] Docket 1 at 10 ¶¶ 30–32.

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 4 of 30

Fire Department's proposed conditions.[16]   After the Platting Board approved S12420, Spinell Homes, Inc., (Spinell) purchased the land.  According to Plaintiffs, Mission Hills, LLC (Mission), which is owned by Spinell, currently owns the land.[17]

In April 2020, Anchorage voters approved a general obligation bond proposition that provided less than 1% of the funding necessary to construct the Mountain Air Drive connection.[18]  In October 2020, Andre Spinelli, a real estate developer who is the vice-president and partial owner of Spinell, filed an application with the Platting Board seeking to amend S12420, Case No. S12599, which is the subject of this lawsuit.[19]  Mr. Spinelli sought the elimination of the three conditions including in S12420: (1) the prohibition of construction beyond 11 houses until a secondary access road is funded and approved for construction; (2) the requirement that each dwelling have an automatic sprinkler system until the secondary access road is funded and approved; and (3) the requirement that each lot be developed using Firewise construction and landscaping techniques.[20] Mr. Spinelli proposed that these conditions be substituted with a condition requiring

---

[16] Docket 1 at 12 ¶¶ 39–40.

[17] Docket 1 at 13 ¶¶ 42–43.

[18] Docket at 16–17 ¶ 54.

[19] Docket 1 at 13 ¶ 43.

[20] Docket 1 at 14 ¶ 44.

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 5 of 30

the construction of a private water system that would supply domestic household water to the Spruce Terraces Subdivision and supply firefighting water in accordance with the National Fire Protection Association standards.[21] He explained that "the residents above Luna [the location of the proposed Spruce Terraces Subdivision] would be better protected from fire by the proposed private water system than by a secondary access road."[22]

The Traffic Department objected to Mr. Spinelli's proposal because "the proposed private water system does not address concerns that there would be no egress from the area above Luna if a major Hillside event impacted Sandpiper Drive [the single access road]."[23] The Fire Department's fire marshal, by contrast, issued a memorandum stating that the department supported the Spinelli proposal.[24] Plaintiffs submitted written comments objecting to the Spinelli proposal and presented oral comments at a hearing on the proposal.[25] Ultimately, the Platting Board approved S12599, eliminating the three conditions requiring phased construction, a sprinkler system, and Firewise construction and landscaping

---

[21] Docket 1 at 18–19 ¶ 59, 24–25 ¶ 80.

[22] Docket 1 at 18–19 ¶ 59.

[23] Docket 1 at 19 ¶ 60.

[24] Docket 1 at 20 ¶ 62.

[25] Docket 1 at 23 ¶¶ 73, 75.

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 6 of 30

Case 3:22-cv-00007-SLG   Document 23   Filed 10/11/22   Page 6 of 30

imposed in S12410 and substituting the requirement that Mr. Spinelli construct a private water system to supply the Spruce Terraces Subdivision with domestic household water and firefighting water.[26]

In June 2021, Plaintiffs appealed the Platting Board's decision with respect to S12599 to the Board of Adjustment, contending that the decision violated 30 different municipal laws and Plaintiffs' due process and equal protection rights under the United States and Alaska Constitutions.[27]  In December 2021, the Board of Adjustment affirmed the Platting Board's decision, explaining that the record supported the Platting Board's findings.[28]  The Board of Adjustment decided that it lacked jurisdiction to consider many of Plaintiffs' arguments and that Plaintiffs had waived their rights to make numerous claims, including their due process and equal protection claims.[29]  The Board of Adjustment concluded that "the public may have some legitimate concerns about the process as it occurred in this case and the outcome, although not sufficiently addressed by or perhaps protected in the current Code, or justiciable by us for the reasons stated herein" and recommended

---

[26] Docket 1 at 24–25 ¶ 80.

[27] Docket 1 at 38 ¶ 122.

[28] Docket 1 at 40 ¶ 130.

[29] Docket 1 at 40 ¶¶ 131–32.

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 7 of 30

that "policy-makers seriously consider the concerns and how best to address those concerns, perhaps through future code changes."[30]

Plaintiffs initiated this action in January 2022 to challenge approval of S12599.[31]  Counts I through VII allege violations of municipal law, Count VIII alleges a violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and Count IX alleges a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.[32] Defendants filed a motion to dismiss pursuant to both Federal Rules of Civil Procedure Rule 12(b)(1) and Rule 12(b)(6), which is now before the Court for determination.[33]

## LEGAL STANDARDS

### I.  Rule 12(b)(1)

The Municipality seeks to dismiss the municipal law claims, Claims I through VII, alleging this Court lacks subject-matter jurisdiction to adjudicate them.  Federal

---

[30] Docket 1 at 41–42 ¶ 134.

[31] Docket 1 at 77.

[32] *See generally* Docket 1 at 64–73 ¶¶ 220–68 (Counts I through VII); Docket 1 at 73–76 ¶¶ 269–91 (Counts VIII through IX).

[33] Docket 14 (Defs.' Mot. to Dismiss).

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 8 of 30

Rule of Civil Procedure 12(b)(1) authorizes a party to seek the dismissal of an action for lack of subject-matter jurisdiction.[34]   Plaintiffs bear the burden of demonstrating that the Court has subject-matter jurisdiction over their claims.[35]

## II.    Rule 12(b)(6)

The Municipality moves to dismiss Plaintiffs' federal claims, Claims VIII and IX, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[36]

## DISCUSSION

## I.    Supplemental Jurisdiction Over the Municipal Law Claims

For purposes of this Rule 12(b)(1) analysis, the Court will assume that it has federal question jurisdiction over Claims VIII and IX in accordance with 28 U.S.C. §§ 1331 and 1343 because these claims are brought pursuant to 42 U.S.C. § 1983 for the alleged violations of Plaintiffs' Fourteenth Amendment rights.  While original

---

[34] A district court has jurisdiction to determine whether it has subject-matter jurisdiction.  *See Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).

[35] *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[36] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 9 of 30

jurisdiction may exist over Plaintiffs' Claims VIII and IX under 42 U.S.C. § 1983—a federal statute—original jurisdiction is lacking over Plaintiffs' municipal law claims because the claims arise under municipal law and the parties do not appear to have diverse citizenship.[37]

The only potential basis for this Court's jurisdiction over Plaintiffs' municipal law claims is the supplemental jurisdiction statute, 28 U.S.C. § 1367(a). Pursuant to 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Under 28 U.S.C. § 1367(a), municipal law claims "form part of the same case or controversy" as a federal claim when they derive from a "common nucleus of operative fact" and "would ordinarily be expected to be resolved in one judicial proceeding."[38]

Even if supplemental jurisdiction exists, district courts have discretion to decline to exercise supplemental jurisdiction if (1) the supplemental claim "raises

---

[37] Docket 1 at 3 ¶¶ 5–8; 64–73 ¶¶ 269–91 (Compl.).

[38] *Arroyo v. Rosas*, 19 F.4th 1202, 1210 (9th Cir. 2021) (determining whether the court had supplemental jurisdiction over a state law claim) (quoting *Tr. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003)).

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 10 of 30

a novel or complex issue of State law"; (2) the supplemental claim "substantially predominates" over the claim over which the court has original jurisdiction; (3) the court "has dismissed all claims over which it has original jurisdiction"; or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction."[39] This analysis should be guided by "the values of economy, convenience, fairness, and comity."[40]

Plaintiffs explain that their municipal claims are so related to Plaintiffs' federal constitutional claims such that all of Plaintiffs' claims form part of the same case or controversy under Article III of the United States Constitution.[41] The Municipality contends that this Court should dismiss Counts I through VII pursuant to Rule 12(b)(1), either for lack of jurisdiction or because this Court declines to exercise its supplemental jurisdiction.[42]

In *City of Chicago v. International College of Surgeons*, the Supreme Court addressed the question that is at the heart of this issue: whether a federal district court may exercise supplemental jurisdiction when a party is seeking review of a

---

[39] 28 U.S.C. § 1367(c).

[40] *Abrams v. Blackburne & Sons Realty Cap. Corp.*, No. 2:19-CV06947-CAS(ASx), 2020 WL 509394, at *3 (C.D. Cal. Jan. 31, 2020).

[41] Docket 1 at 2–3 ¶¶ 2–3.

[42] Docket 14 at 9–15.

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 11 of 30

state administrative agency determination when the plaintiffs have alleged both federal constitutional and state administrative challenges to the agency action.[43] The plaintiffs in that case sought permits to construct condominiums from the Chicago Landmarks Commission, but the Commission denied their permit applications. The plaintiffs sought judicial review before the Illinois state courts pursuant to the Illinois Administrative Review Law, alleging federal constitutional claims and violations of state law. The defendants removed the case to federal court, where the district court granted summary judgment in their favor. The Seventh Circuit reversed and directed the district court to remand the case to state court, holding that the federal courts did not have jurisdiction.[44]

The Supreme Court reversed the Seventh Circuit, holding that federal courts have supplemental jurisdiction to review state administrative challenges, provided that the state and federal claims are part of the same case or controversy.[45] The Supreme Court explained that "[t]here is nothing in the text of § 1367(a) that indicates an exception to supplemental jurisdiction for claims that require on-the-record review of a state or local administrative determination. Instead, the statute

---

[43] 522 U.S. 156, 159 (1997).

[44] *Id.* at 159–61.

[45] *Id.* at 165.

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 12 of 30

generally confers supplemental jurisdiction . . . without reference to the nature of review."[46]

In this case, if the Court has original jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, then in accordance with *City of Chicago*, the Court has supplemental jurisdiction over Counts I through VII if the municipal and federal law claims "derive from a common nucleus of operative facts" such that the claims are all part of the same case or controversy.[47] Here, the municipal law claims and the federal claims share a common nucleus of operative facts: They all arise out of the approval of S12599 by both the Platting Board and the Board of Adjustment.

The Municipality points out that Anchorage Municipal Code 21.03.050D.3 accords to Plaintiffs the right to appeal the final decision of the Board of Adjustment to the Superior Court of the State Court. The Municipality accordingly maintains that Plaintiffs' "tactical decision to forego a state-court appeal of their municipal law claims deprives this Court of supplemental jurisdiction over them."[48] The Municipality relies on *Misischia v. Pirie*.[49] The plaintiff in *Misischia* had thrice failed

_____

[46] *Id*. at 169.

[47] *Id*. at 165 (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

[48] Docket 14 at 12.

[49] 60 F.3d 626, 627–28 (9th Cir. 1995).

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 13 of 30

the examination to practice as a dentist in Hawaii.[50]  Pursuant to Hawaii Administrative Rules, the plaintiff sought review before the Dental Board, but the Dental Board refused to change his grade to a pass.[51]  Much like in this case, the plaintiff in *Misischia* could have appealed the Dental Board's determination to the Hawaii state court.[52]  Instead, the plaintiff in *Misischia* elected to file suit in federal court, alleging that he was deprived of his federal due process rights because the Dental Board  had violated the state regulations governing dental board procedures.  The Ninth Circuit's primary holding was that the district court had properly granted summary judgment to the defendants based on res judicata, reasoning that the claims he brought in federal court were precluded by the final, unappealed state administrative decision.[53]

The Municipality contends that the Circuit in *Misischia* also rejected the plaintiff's alternative argument that the federal district court should have exercised

---

[50] *Id*. at 627.

[51] *Id*. at 627–28.

[52] *Compare* Haw. Rev. Stat. § 19-14(a), (b) ("Any person aggrieved by a final decision and order in a contested case . . . is entitled to judicial review . . . . [P]roceedings for review shall be instituted in the circuit court within thirty days after . . . service of the certified copy of the final decision and order of the agency[.]) *with* Anchorage Municipal Code 21.03.050D.3 and .5 ("[A] person jointly or severally aggrieved may appeal to the superior court . . . . [a] final decision of the board of adjustment on an appeal from the platting board regarding an application for a subdivision[.]).

[53] 60 F.3d at 628–30.

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 14 of 30

supplemental jurisdiction to "perform[] the same judicial review of the Board decision which the Hawaii Circuit Court would under the Hawaii statute."[54]  In a closing paragraph of the decision, the Circuit explained that "[a] litigant cannot use supplemental jurisdiction to have a federal judge instead of a state judge perform the judicial review of a state administrative agency decision which the state statute assigns to a state court."[55]  But this discussion of supplemental jurisdiction was not determinative to the outcome, given that only federal § 1983 claims were presented in *Misischia*.[56]

The Ninth Circuit's decision in *Misischia* is distinguishable from the case at hand for several reasons.  First and most importantly, in *Misischia*, the plaintiff did not file any supplemental claims alleging violations of state law, filing instead a § 1983 action against the Board members in federal court.[57]  In *City of Chicago*, by contrast, the plaintiffs sought relief under the Illinois Constitution as well as

---

[54] *Id.* at 630–31; Docket 14 at 12–13.

[55] 60 F.3d at 631 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984), and *Han v. U.S. Dep't of Just.*, 45 F.3d 333, 339 (9th Cir. 1995)).

[56] *See Dictum*, *Black's Law Dictionary* (11th ed. 2019) (defining "judicial dictum" as "[a]n opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision and therefore not binding even if it may later be accorded some weight").  The statements made in *Misischia* regarding supplemental jurisdiction would be characterized as dicta because it appears that the plaintiffs did not file any state claims requiring the court to reach that question.

[57] 60 F.3d at 628.

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 15 of 30

administrative review of the state commission's decisions, in addition to their federal constitutional claims.[58]   Notably, the instant case is more like *City of Chicago* because Plaintiffs seek judicial review of both municipal and federal claims before this Court.[59]   Second, the supplemental jurisdiction discussion in *Misischia* predates the Supreme Court's holding that federal courts have supplemental jurisdiction to review local administrative determinations, even if a state statute provides for judicial review of these local administrative determinations in state court.[60]   Accordingly, the Court has supplemental jurisdiction over the municipal claims raised in Counts I through Counts VII.

Alternatively, the Municipality contends that even if there is supplemental jurisdiction over the municipal claims, the Court should decline to exercise it.[61] Indeed, in *City of Chicago*, the Supreme Court cautioned that "to say that the terms of § 1367(a) authorize the district courts to exercise supplemental jurisdiction over

---

[58] 522 U.S. at 160.

[59] *See generally* Docket 1 at 64–73 ¶¶ 220–68 (Counts I through VII); Docket 1 at 73–76 ¶¶ 269–91 (Counts VIII through IX).

[60] *City of Chi.*, 522 U.S. at 159, 164–65. However, the Ninth Circuit recently cited to *Misischia*, as follows: "When judicial review of an agency decision is available, plaintiffs need appeal only claims that they are required to appeal to state court, such as the state APA claim here."  *Spirit of Aloha Temple v. Cnty. of Maui*, ___ F.4th ___, Nos. 19-169389, 20-15871, 2022 WL 4374632, at *11 (9th Cir. Sept. 22, 2022) (citing *Misischia*, 60 F.3d at 631).

[61] Docket 14 at 13–15.

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 16 of 30

state law claims for on-the-record review of administrative decisions does not mean that the jurisdiction *must* be exercised in all cases."[62]  The Supreme Court recognized that "there may be situations in which a district court should abstain from reviewing local administrative determinations even if the jurisdictional prerequisites are otherwise satisfied."[63]

The Municipality urges this Court to follow the U.S. District Court for the District of Hawaii's decision in *Spirit of Aloha Temple v. County of Maui*, a case in which the district court heeded the Supreme Court's observation in *City of Chicago* and declined to exercise supplemental jurisdiction over local administrative determinations involving land use planning.[64]  The plaintiffs in that case had applied for a special use permit for a church and a church-operated bed and breakfast establishment, but the County of Maui Planning Commission denied the permit.[65]  Much like in this case, the plaintiffs could have sought review of the Planning Commission's decision in the Hawaii state courts.[66]  Instead, the plaintiffs sued the County in federal court, alleging violations of Hawaii state law and federal

---

[62] 522 U.S. at 172 (emphasis in original).

[63] *Id.* at 174.

[64] No. 14-00535, 2016 WL 347298 at *3 (D. Haw. Jan. 27, 2016).

[65] *Id.* at *1.

[66] Haw. Rev. Stat. § 91-14.

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 17 of 30

law.[67]  The district court declined to exercise supplemental jurisdiction over the plaintiffs' state claims and stayed the remaining federal claims pending the state court's determination of the state claims.[68]

The district court explained that it had supplemental jurisdiction in accordance with *City of Chicago* over the claim seeking review of the Planning Commission's decision pursuant to Hawaii law.[69]  However, the court declined to exercise its jurisdiction.  The court observed that "[t]his [wa]s not the typical appeal" because the plaintiffs sought "a special use permit in a special management area for a religious use" and the relevant state law was "clearly complex."[70]  Moreover, the court found that the state law claims substantially predominated over the claims over which the district court had original jurisdiction.  The court explained that "[t]his court, in fact, is unable to discern from Plaintiffs' Complaint any theory of liability with regard to the federal claims that does not rely on the [State's administrative decision.]"[71]

---

[67] *Spirit of Aloha Temple*, 2016 WL 347298 at *1.

[68] *Id*. at *14.

[69] *Id*. at *3–4.

[70] *Id*. at *5.

[71] *Id*. at *8.

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 18 of 30

In light of the district court's decision declining to exercise supplemental jurisdiction, the plaintiffs went to state court to challenge the denial of the permit under state law, but reserved for federal adjudication all of their federal claims. The state court affirmed the Commission's denial of the permit. After the state court reached a final decision, the plaintiffs returned to federal court to adjudicate their federal claims.[72] The district court then granted summary judgment for the County, on certain federal claims, concluding that the Commission's findings barred the plaintiffs' federal claims under collateral estoppel because the state circuit court had affirmed the Commission's factual findings and conclusions of law.[73]

The Ninth Circuit reversed, holding that the plaintiffs' federal claims were not collaterally estopped because the plaintiffs had not received a full and fair adjudication of the federal questions before the state commission or the state court.[74] The Circuit cited to *Misischia* for the following proposition: "[w]hen judicial

---

[72] *Spirit of Aloha Temple v. Cnty. of Maui*, 409 F. Supp. 3d 889, 895, 898–900 (D. Haw. 2019).

[73] *Id*. at 900–01, 905, 910–12.

[74] *Spirit of Aloha Temple v. Cnty. of Maui*, ___ F.4th ___, Nos. 19-169389, 20-15871, 2022 WL 4374632, at *10–13 (9th Cir. Sept. 22, 2022). In addition to reversing the grant of summary judgment with respect to collateral estoppel, the Ninth Circuit also held that the plaintiffs had "raised sufficient evidence that the zoning regulations are facially unconstitutional" because they violate the First Amendment. *Id*. at *5–10.

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 19 of 30

Case 3:22-cv-00007-SLG   Document 23   Filed 10/11/22   Page 19 of 30

review of an agency decision is available, plaintiffs need appeal only claims that they are required to appeal to state court," and not their federal claims.[75]

The Municipality in this case maintains that, of the four reasons identified in the statute when a district court may decline to exercise supplemental jurisdiction under Section 1367(c), two are applicable in this case: (1) the nonfederal claims raise novel or complex issues of state law; and (2) the nonfederal claims substantially predominate over the claims over which the Court has original jurisdiction.

As to the first reason, the Municipality contends that many of Plaintiffs' municipal law arguments are novel arguments under local and Alaska law.[76] Plaintiffs disagree with the Municipality's characterization of the municipal law claims as novel, explaining that "the municipal law issues are not new and noteworthy with the possible exception of the conflicts of interest violations that coincide with the constitutional violations."[77]

The Alaska Supreme Court, however, has not considered any of the sections of the Anchorage Municipal Code or the Anchorage Municipal Code of

---

[75] *Id.* at * 11 (citing *Misischia*, 60 F.3d at 631).

[76] Docket 14 at 13.

[77] Docket 16 at 24.

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 20 of 30

Regulations that Plaintiffs allege have been violated in this case. Accordingly, there is not any case law to guide the Court's analysis. Just like in *Spirit of Aloha Temple*, resolution of Counts I through VII would require the Court "to engage in a complex analysis of statutes, ordinances, and rules as applied to the facts of this case, not to mention the policy objectives influencing every level of state government."[78]

Moreover, several of the municipal laws require a complex balancing of multiple factors that are highly factual and require consideration of competing local land use policies. For example, Plaintiffs contend that the Municipality violated Anchorage Municipal Code 21.03.240, which provides that in order to grant a variance, the platting authority must consider if:

a. There are special circumstances or conditions affecting the property such that the strict application of the provisions of the subdivision regulations would clearly be impractical, unreasonable, or undesirable to the general public;
b. The granting of the specific variance will not be detrimental to the public welfare or injurious to other property in the area in which such property is situated;
c. Such variance will not have the effect of nullifying the intent and purpose of the subdivision regulations or the comprehensive plan of the municipality; and
d. Undue hardship would result from strict compliance with specific provisions or requirements of the subdivision regulations.[79]

---

[78] *Spirit of Aloha Temple*, 2016 WL 347298 at *7.

[79] Anchorage Municipal Code 21.03.240(G)(3).

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 21 of 30

This one provision of the Anchorage Municipal Code alone would require this Court to wade into the thicket of local land use policies. Resolution of Counts I through VII would require this Court to engage in a complex analysis of 30 provisions of Anchorage Municipal Code and its associated regulations, in addition to the policy objectives underlying these provisions. As in *Spirit of Aloha*, these "novel and complex issues" of municipal law are better resolved, in the first instance, by the state courts.[80]

As to the second reason, the Municipality maintains that "[e]ven a cursory review of the Birnbaums' complaint illustrates that the local law claims are, by far, the primary focus of the lawsuit."[81] Indeed, seven of the nine counts sound exclusively in municipal law, alleging violations of 30 different local ordinances and regulations.[82] And the majority of the complaint and Plaintiffs' opposition to the motion to dismiss discuss in great detail the alleged substantive and procedural violations of municipal law.[83]

---

[80] *Spirit of Aloha Temple*, 2016 WL 347298 at *7.

[81] Docket 14 at 13.

[82] Docket 1 at 64-73 ¶¶ 220-68.

[83] Docket 1 at 2 ¶ 3, 8-50 ¶¶ 24-166, 64-73 ¶¶ 220-68; Docket 16 at 3-5, 7-18.

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 22 of 30

Case 3:22-cv-00007-SLG   Document 23   Filed 10/11/22   Page 22 of 30

Plaintiffs rely on *United Mine Worker v. Gibbs*[84] to contend that the municipal law violations do not substantially predominate, quoting the Supreme Court as explaining "that 'substantially predominates' means 'in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought[.]'"[85] Plaintiffs maintain that the federal claims predominate because the federal and municipal claims rely on the same proof—"the administrative record and evidence subject to judicial notice"—and because the claims seek the same remedy— "invalidation of the approval of S12599."[86]

Plaintiffs omitted several key parts of the quote from the Supreme Court, however, which states in full "*if it appears that the state issues* substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, *the state claims may be dismissed without prejudice and left for resolution to state tribunals*."[87]  And in this case, the proof is a matter of municipal law: the administrative record from the proceedings before the Municipality.  The scope of the issues raised is almost exclusively municipal.  Indeed, Plaintiffs' theories of liability with respect to the federal claims

---

[84] 383 U.S. 715, 726 (1966).

[85] Docket 16 at 24.

[86] Docket 16 at 24–25.

[87] 383 U.S. at 726–27 (emphasis added).

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 23 of 30

Case 3:22-cv-00007-SLG   Document 23   Filed 10/11/22   Page 23 of 30

all rely on the Municipality's decision to approve S12599. Finally, the remedy sought is the invalidation of the municipal action. All three of the *Gibbs* factors show that the issues of municipal law substantially predominate in this case.

In this respect, this case is remarkably similar to *Spirit of Aloha Temple*. Just as in that case, here the Court "is unable to discern from Plaintiffs' Complaint any theory of liability with regard to the federal claims that does not rely on the [state administrative action.]"[88] In both cases, "the court would likely address the merits of the administrative appeal before addressing the merits of the federal claims," and if the Court were to affirm the agency's decision, "it is hard to see how Plaintiffs could succeed on their federal claims."[89] In regards to the remedy sought, the Plaintiffs "primarily seek to invalidate the [state administrative action.]" And "even in terms of proof, the administrative appeal predominates, both because the federal claims turn on the administrative record, and because [the state claims] would likely require the most extensive review of the administrative record."[90] It is clear that the municipal law claims substantially predominate in this case.

---

[88] *Spirit of Aloha Temple*, 2016 WL 347298 at *8.

[89] *Id*.

[90] *Id*.

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 24 of 30

The additional considerations of fairness, convenience, and comity all suggest that this Court should decline to exercise supplemental jurisdiction over Counts I through VII.[91]  Fairness and convenience do not tip the balance in favor of retaining jurisdiction.  Presumably, Plaintiffs can pursue their administrative appeal in state court because the deadline to file in the state court has been tolled in accordance with 28 U.S.C. § 1367(d) while Counts I through VII are pending in this Court and for 30 days after the claims are dismissed.

Considerations of comity also direct this Court to decline to exercise supplemental jurisdiction.  The Supreme Court has held that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."[92]  And the Ninth Circuit has cautioned that "land use planning . . . is today a sensitive area of social policy" and that "[f]ederal courts must be wary of intervention that will stifle innovative state efforts to find solutions to complex social problems."[93]  Perhaps in recognition of the value of review by state courts of local land use decisions, the Anchorage Municipal Code provides that a person

---

[91] *Gibbs*, 383 U.S. at 726.

[92] *Id.*

[93] *Rancho Palos Verdes Corp. v. City of Laguna Beach*, 547 F.2d 1092, 1094–95 (9th Cir. 1976).

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 25 of 30

aggrieved by a final decision of the Board of Adjustment may appeal to the superior court.[94] If this Court were to retain jurisdiction over Counts I through VII, the parties would be deprived of the opportunity to litigate these claims before the Alaska Court system, which has more experience in handling such matters and is better equipped to balance the complex legal and factual issues of local concern.

In light of the forgoing, this Court declines to exercise supplemental jurisdiction over Counts I through VII.

## II. Rule 12(b)(6)

The parties have fully briefed whether dismissal of all claims is warranted pursuant to Rule 12(b)(6). However, the Court finds that dismissal of Counts I through VII is appropriate under Rule 12(b)(1) and abstains from deciding Counts VIII and IX, as discussed below. Therefore, the Court does not reach the Municipality's arguments under Rule 12(b)(6) at this time.[95]

## III. Pullman Abstention

Because the Court declines to exercise supplemental jurisdiction over Counts I through VII, this Court must now decide whether to temporarily abstain

---

[94] Anchorage Municipal Code § 21.03.050D.3 and .5.

[95] *See e.g.*, *Northern Hospitality Group, Inc. v. Poynter*, No. 3:22-cv-00012-JMK, 2022 WL 3028037 at *4 (D. Alaska Aug. 1, 2022) ("The Court finds that dismissal of Defendant's counterclaim is appropriate under Rule 12(b)(1) and therefore does not reach Plaintiffs' arguments under Rule 12(b)(6)).

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 26 of 30

from determining Plaintiffs' remaining federal claims pending resolution of Counts I through VII in state court in accordance with *Railroad Commission of Texas v. Pullman Co.*[96] Neither party in this case has moved for abstention; but the Court can raise the issue *sua sponte*.[97]

The *Pullman* abstention doctrine "allows postponement of the exercise of federal jurisdiction when 'a federal constitutional issue . . . might be mooted or presented in a different posture by a state court determination of pertinent state law.'"[98] "By abstaining in such cases, federal courts will avoid both unnecessary adjudication of federal questions and 'needless friction with state policies . . . .'"[99] If the Court abstains under *Pullman*, the proper course of action is to retain jurisdiction and stay the action pending final disposition of Plaintiffs' state court action, and not dismissal.[100]

*Pullman* abstention is warranted if the following three conditions are satisfied: "(1) the federal plaintiff's complaint requires resolution of a sensitive

---

[96] 312 U.S. 496 (1941).

[97] *See Richardson v. Koshiba*, 693 F.2d 911, 915 (9th Cir. 1982).

[98] *Columbia Basin Ap't Ass'n v. City of Pasco*, 268 F.3d 791, 801 (9th Cir. 2001) (quoting *Kollsman v. City of L.A.*, 737 F.2d 830, 833 (9th Cir. 1984)).

[99] *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984) (alteration in original) (quoting *Pullman*, 312 U.S. at 500).

[100] *Santa Fe Land Imp. Co. v. City of Chula Vista*, 596 F.2d 838, 841 (9th Cir. 1979).

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 27 of 30

question of federal constitutional law; (2) the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue of state law is unclear."[101]

As to the first requirement, the Ninth Circuit has "consistently held that land use planning is a sensitive area of social policy that meets the first requirement for *Pullman* abstention."[102]  This case directly implicates land use planning because Plaintiffs are asking the Court to decide whether the Municipality violated state and federal law by approving S12599.

As to the second requirement, resolution in the state courts of the municipal law questions could moot or narrow Plaintiffs' federal constitutional claims.  If, for example, the state court were to grant Plaintiffs the relief that they seek—invalidation of the approval of S12599—this Court would not need to decide the federal constitutional question of whether Plaintiffs are entitled to a remedy based upon the alleged violations of the due process and equal protection clauses of the United States Constitution.[103]

---

[101] *Potrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 888 (9th Cir. 2011) (quoting *Spoklie v. Montana*, 411 F.3d 1051, 1055 (9th Cir. 2005)).

[102] *San Remo Hotel v. City and Cnty. of S.F.*, 145 F.3d 1095, 1105 (9th Cir. 1998) (citing *Sinclair Oil Corp. v. Cnty. of Santa Barbara*, 96 F.3d 401, 401 (9th Cir. 1996)); *see also Kollsman*, 737 at 833; *Rancho Palos Verdes Corp.*, 547 F.2d at 1094.

[103] *See, e.g.*, *C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 377–79 (9th Cir. 1983).

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 28 of 30

Case 3:22-cv-00007-SLG   Document 23   Filed 10/11/22   Page 28 of 30

As to the third requirement, the Ninth Circuit has observed that "a local government's enactment of land use regulations 'is by nature a question turning on the peculiar facts of each case in light of the many [applicable] local and state-wide land use laws.'"[104]  "We do not claim the ability to predict whether a state court would decide that the [local government] here abused its discretion."[105]  This case involves the application of the facts to and consideration of 30 provisions of the Anchorage Municipal Code and associated regulations such that "the possibly determinative issue[s] of state law [are] unclear."[106]

## CONCLUSION

Based on the foregoing,

IT IS ORDERED that Counts I through VII are DISMISSED because the Court declines to exercise supplemental jurisdiction over Counts I through VII. These Counts are dismissed without prejudice to Plaintiffs pursuing of those claims in state court pursuant to 28 U.S.C. § 1367(d).

IT IS FURTHER ORDERED that this action, now consisting of only Counts VIII and IX, is STAYED.  The Court retains jurisdiction.  The stay will be lifted upon

---

[104] *Sinclair Oil Corp*, 96 F.3d at 410 (alteration in original) (quoting *Santa Fe Land Imp. Co.*, 596 F.2d at 841).

[105] *Id.*

[106] *Potrero Hills Landfill, Inc.*, 657 F.3d at 888 (quoting *Spoklie*, 411 F.3d at 1055).

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 29 of 30

the parties' submission of written statements either attaching a final state-court decision or explaining a change in circumstances that warrants lifting of the stay. The parties shall file a report on the status of the state court proceedings on or before April 30, 2023, and every six months thereafter.

IT IS FURTHER ORDERED that the motion at Docket 14 is GRANTED in part and DENIED in part as set forth herein.

DATED this 11th day of October, 2022, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:22-cv-00007-SLG, *Birnbaum, et al. v. Municipality of Anchorage, et al.*
Order re Motion to Dismiss
Page 30 of 30

Case 3:22-cv-00007-SLG   Document 23   Filed 10/11/22   Page 30 of 30